FILED
United States Court of Appeals
Tenth Circuit

September 2, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

AMY A. GIULIANO,

      Plaintiff-Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

      Defendant-Appellee.

No. 13-1455
(D.C. No. 1:12-CV-02908-CMA)
(D. Colo.)

**ORDER AND JUDGMENT[*]**

Before **HARTZ**, **TYMKOVICH**, and **HOLMES**, Circuit Judges.

Amy A. Giuliano appeals a district court order affirming the Commissioner's

denial of supplemental security income benefits. Exercising jurisdiction under

28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

**I.  Background**

Ms. Giuliano applied for benefits in 2008, claiming she was disabled by migraine headaches and sleep apnea.  After a hearing an administrative law judge (ALJ) determined at step five of the five-step sequential evaluation process, *see* 20 C.F.R. § 416.920(a)(4); *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (setting forth the five-step process), that Ms. Giuliano was not disabled because she retained the residual functional capacity (RFC) to perform the full range of work at all exertional levels, subject to certain nonexertional limitations.  In particular, the ALJ restricted Ms. Giuliano to "simple, unskilled work with a specific vocational preparation (SVP) of one or two."  Admin. R. at 15.  The ALJ also concluded she should avoid exposure to flashing lights, work requiring constant use of fine vision, and high-noise environments.  In reaching this decision, the ALJ discounted the opinion of Ms. Giuliano's neurologist, Dr. Richard Gamuac, and declined to credit fully Ms. Giuliano's testimony concerning the limiting effects of her symptoms.  The Appeals Council denied review, and the district court affirmed the Commissioner's decision.

Ms. Giuliano now seeks review in this court, claiming the ALJ (1) improperly evaluated Dr. Gamuac's opinion, (2) incorrectly assessed her RFC, and (3) wrongfully discredited her testimony.

**II. Discussion**

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014) (internal quotation marks omitted). "In conducting our review, we may neither reweigh the evidence nor substitute our judgment for that of the agency." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014) (brackets and internal quotation marks omitted).

**A. Treating Physician's Opinion**

Ms. Giuliano first contends that the ALJ improperly evaluated Dr. Gamuac's opinion. Dr. Gamuac initially saw Ms. Giuliano in June of 2009 for a neurological consultation. She reported experiencing headaches since 2002 and described them as moderate to severe with associated sensitivity to light and noise. Dr. Gamuac's impression was that she had "chronic headaches consistent with migraines," and he therefore ordered several tests, prescribed medication, and scheduled a follow-up. Admin. R. at 202. During the next four months, Dr. Gamuac regulated Ms. Giuliano's medications and saw her twice more, on August 6 and October 13, 2009.[1]

---

[1] Although Ms. Giuliano asserts in her reply brief that Dr. Gamuac continued to see her, she does not dispute the ALJ's statement that the doctor's last treatment record was in late 2009. Admin. R. at 16.

Also on October 13, 2009, Dr. Gamuac completed a questionnaire indicating that she suffered migraines two to three times a week, each lasting 48 to 72 hours. He indicated that her headaches occurred despite treatment with medication and that she could not "function on a job while the headaches occur" because she had blurred vision and sensitivity to light and noise. *Id.* at 251. Some 16 months later, Dr. Gamuac completed a second questionnaire sent to him by Ms. Giuliano's attorney. This second questionnaire asked "whether her condition remain[ed] at the same severity level [he] listed on the [October 13, 2009] questionnaire." *Id.* at 314. Dr. Gamuac responded by checking, "Yes," and indicating that her migraines "increase in frequency" while "[r]eading paperwork" and "[v]iewing a computer monitor screen." *Id.*

The ALJ considered both questionnaires but gave them "little, and certainly not controlling, weight." *Id.* at 17. She explained that the limitations that Dr. Gamuac attributed "to [Ms. Giuliano's] migraines were inconsistent with not only [his own] treatment records, which revealed relatively stable and effective treatment, but also the records from [Ms. Giuliano's] primary care facility and her own activities as described." *Id.* On appeal, Ms. Giuliano contends that the ALJ's reasons for discounting Dr. Gamuac's opinions are not supported by substantial evidence. We disagree.

"A treating physician's opinion must be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and

is not inconsistent with other substantial evidence in the record." *Knight*, 756 F.3d at 1176 (internal quotation marks omitted). If an opinion is not entitled to controlling weight, the ALJ must still determine what weight, if any, to assign to the opinion by considering the factors set forth at 20 C.F.R. § 416.927. *Id.* at 1176-77.[2] The ALJ must give good reasons for the weight she assigns. *See Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003). Although she need not explicitly discuss each factor, *see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), she must be "sufficiently specific" to permit meaningful appellate review, *Watkins*, 350 F.3d at 1300 (internal quotation marks omitted).

Here, the ALJ properly evaluated Dr. Gamuac's opinions and clearly articulated good reasons for refusing to accord those opinions controlling weight. First, as the ALJ explained, Dr. Gamuac's opinions were inconsistent with his own treatment notes, including a note indicating that although Ms. Giuliano reported experiencing moderate to severe headaches, she responded to medication.

---

[2] Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (internal quotation marks omitted).

Dr. Gamuac's notes also indicate that an "EEG did not show any epileptiform activity" and there were no abnormal findings in any other tests he performed. Admin. R. at 246. Although she experienced headaches two to three times a week, the treatment note from her October 2009 visit indicates that an increase in her medication alleviated her headaches, despite some side-effects.

Similarly, the ALJ determined that Dr. Gamuac's opinions were inconsistent with other evidence in the record. A progress note dated June 2009 from the Pueblo Community Health Center (PCHC) indicates that Ms. Giuliano had complained of headaches but had not been seen there since 2007. She returned to PCHC in January 2010 because of a stomach ache and reported that she had suffered headaches for two days, although she said that medication helped. The following month, she was seen twice at PCHC, though she made no complaints of headaches. Then in August of 2010, she reported headaches that impacted her speech, but an MRI taken in October of that year showed that her brain was "developmentally normal," *id.* at 312.

Additionally, the ALJ cited Ms. Giuliano's daily activities, which included caring for her young daughter, maintaining their household, driving her daughter back and forth to school, and attending her daughter's school concerts. She also read to her daughter, watched television, and went to movies, the park, and family functions. As the ALJ concluded, these activities do not support Dr. Gamuac's opinion. The doctor believed that Ms. Giuliano could not function when she had headaches upwards of three times a week for as long as 72 hours each. But that

would leave too little time for these activities.  He also believed that reading papers and watching computer screens increased the frequency of Ms. Giuliano's headaches.  Yet she read to her daughter and watched television and movies.  She may have had sensitivity to light and noise, and the ALJ accounted for these symptoms in her RFC, but there was little evidence to support Dr. Gamuac's opinions reflected on the two questionnaires.  Thus, the ALJ was entitled to discount Dr. Gamuac's opinions.  *See Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) ("Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence." (internal quotation marks omitted)).

Ms. Giuliano insists that the ALJ failed to account for the factors at § 416.927, but it is clear from the ALJ's decision that she considered the relevant factors, *see Oldham*, 509 F.3d at 1258.  Among those factors was the brevity of Ms. Giuliano's treatment relationship with Dr. Gamuac, the fact that his treatment was limited to ordering tests and monitoring her medications, and the lack of evidentiary support for his opinions reflected on the questionnaires.  The ALJ's analysis was sufficient, and her conclusion is supported by substantial evidence.[3]

---

[3]     Ms. Giuliano asserts that the ALJ should have recontacted Dr. Gamuac to allow him to explain his opinions.  But the duty to recontact a doctor is triggered when the evidence is insufficient to make a proper disability determination.  *See White v. Barnhart*, 287 F.3d 903, 908-09 (10th Cir. 2001).  There is no indication the evidence was insufficient here.

**B. Residual Functional Capacity**

Ms. Giuliano next argues that the ALJ erred in formulating her RFC. She contends that there is no evidence supporting the ALJ's finding that she could work so long as she avoided lights and loud noises, which trigger her migraines. We disagree. The ALJ had ample evidence to support a determination that Ms. Giuliano could work despite her experience with migraine headaches. If anything, the RFC gave her the benefit of the doubt by excluding work that exposed her to environments that she claimed were most likely to trigger the migraines. The ALJ did not err in assessing Ms. Giuliano's RFC.

**C. Credibility**

Finally, Ms. Giuliano contends that the ALJ erred in discrediting her testimony because it was inconsistent with the ALJ's RFC assessment. We perceive no error.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (brackets, citation, and internal quotation marks omitted).

As the ALJ observed, Ms. Giuliano filed a disability report indicating that she suffered from migraines every day and had "difficulty concentrating and seeing, especially to drive or use a computer." Admin. R. at 15. The ALJ also noted that at

her hearing, Ms. Giuliano testified that her migraines had become more intense. Contrasting these allegations with Ms. Giuliano's daily activities, the ALJ ruled that "her statements concerning the intensity, persistence and limiting effects of [her] symptoms were inconsistent with the [RFC] assessment and therefore not credible." *Id.* at 16. Ms. Giuliano says that this analysis was backwards and that the ALJ discredited her simply because her testimony differed from the RFC assessment. But there is no indication that the ALJ failed to consider Ms. Giuliano's credibility in assessing her RFC. Rather, the ALJ expressly examined her daily activities and appropriately determined that they undercut her claim that she was completely unable to work. *See Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013) (claimant's allegations of debilitating fatigue and widespread pain inconsistent with daily activities).

Additionally, the ALJ cited the "longitudinal records," which reflected "a two year absence of treatment" between 2007 and 2009. Admin. R. at 16. This break in treatment at the time when Ms. Giuliano claimed she became disabled and applied for benefits suggests that her migraines were not as debilitating as she alleged. *See Newbold*, 718 F.3d at 1267-68 (14-month hiatus in treatment belied claimant's allegation of extremely limited lifestyle). Also, the ALJ considered the effectiveness of treatment, which included medications that helped with Ms. Giuliano's headaches, albeit with some side-effects. *See Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir.

1988) ("ALJ can weigh and evaluate numerous factors in determining the credibility of pain testimony," including "the levels of medication and their effectiveness").

Apart from these considerations, the ALJ found that Ms. Giuliano's credibility was undermined because she had collected unemployment benefits throughout much of the application process, including the week before her hearing. As the ALJ observed, to be eligible for unemployment benefits Ms. Giuliano had to be "willing and able to work." Admin. R. at 14 (citing Colo. Rev. Stat. § 8-73-107(1)). We note that at her hearing, Ms. Giuliano explained that she was looking for part-time work, which may not have been inconsistent with her allegations of total disability, *see Carmickle v. Comm'r*, 533 F.3d 1155, 1161-62 (9th Cir. 2008). We need not resolve whether this was an appropriate basis for discrediting Ms. Giuliano, however, because she does not address this issue on appeal. *See Krauser v. Astrue*, 638 F.3d 1324, 1326 (10th Cir. 2011) (review limited to issues adequately presented on appeal). And in any event, the ALJ cited other substantial evidence to support her adverse credibility finding.

### III. Conclusion

The judgment of the district court is affirmed.

Entered for the Court

Harris L Hartz
Circuit Judge

- 10 -