FILED
United States Court of Appeals
Tenth Circuit

September 5, 2018

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

DARLENE ROMO, a/k/a Darlene Sigala,

    Plaintiff - Appellant,

v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

    Defendant - Appellee.

No. 17-1354
(D.C. No. 1:16-CV-02248-WJM)
(D. Colo.)

_____

ORDER AND JUDGMENT[*]
_____

Before **MATHESON**, **EID**, and **CARSON**, Circuit Judges.
_____

Darlene Romo appeals the district court's judgment affirming the

Commissioner's denial of her application for social security disability insurance

benefits. We have jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, and

we affirm.

I. Background. Ms. Romo applied for disability insurance benefits in 2011,

asserting she was disabled due to cervicalgia; cervical fusions; chronic low back

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

pain; spondylolisthesis; nerve pain; bulging disc in low back; depression; high blood pressure; and chronic pain. An administrative law judge (ALJ) ruled she was not disabled in 2012, but her case was remanded on appeal. *Romo v. Colvin*, 83 F. Supp.3d 1116, 1122 (D. Colo. 2015). While the remand was pending, Ms. Romo returned to work, first part-time and then later full-time. On remand, a second ALJ held a hearing and issued a new decision in October 2015, finding Ms. Romo not disabled for the closed period between May 20, 2010 (the date she alleged her disability began), and September 30, 2013 (the date she returned to full-time work).

The ALJ applied the five-step sequential evaluation used to assess social security disability claims. *See* 20 C.F.R. § 404.1520(a)(4) (describing five-step analysis). He found that Ms. Romo had not engaged in substantial gainful activity during the relevant period, and that she suffered from the following severe impairments: disorder of the cervical spine, disorder of the lumbar spine, and affective disorder. But he determined these impairments did not meet or medically equal any of the conclusively disabling impairments in the Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, App. 1.

The ALJ then defined Ms. Romo's residual functional capacity (RFC). He concluded that she had the RFC to perform sedentary work, as defined in 20 C.F.R. § 1567(a), with certain restrictions: she must have the option to alternate sitting and standing at will, at a job that can be performed in either position without regard to time spent in either position; she can only occasionally bend, squat, or kneel; she

2

cannot climb ladders or scaffolds; she can only occasionally perform work that is over chest-level; she cannot not operate foot or leg controls; and she can only perform unskilled work.

The ALJ independently assessed the three relevant medical source opinions in making his RFC determination: an August 2010 opinion from treating physician Dr. Leppard that Ms. Romo had extreme limitations, including that she could sit and stand for less than an hour at a time and needed frequent breaks; a June 2011 opinion from treating physician Dr. Cutter that Ms. Romo could stand for less than two hours, walk for about two hours, and sit for approximately four hours with frequent rest breaks; and a July 2011 opinion from state agency consultative physician Dr. McElhinney that Ms. Romo could perform a range of light work with up to four hours of standing/walking and up to six hours of sitting with normal breaks and postural changes. The ALJ determined that Ms. Romo's RFC was more limited than opined by Dr. McElhinney, but less limited in some areas than opined by Drs. Leppard and Cutter.

Based on his RFC determination, the ALJ concluded Ms. Romo could not perform any of her past relevant work. But based on testimony from a vocational expert, the ALJ determined that there was work Ms. Romo could perform in the national and regional economy, specifically, the unskilled jobs of document preparer, lens block gauger, and call out operator. Thus, he determined that Ms. Romo was not disabled. The Appeals Council found no basis to change the ALJ's decision, and the district court affirmed the Commissioner's decision. This appeal followed.

3

II. Discussion. "Our review is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014). "Substantial evidence is more than a scintilla, but less than a preponderance." *Id*. (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record." *Id*. (internal quotation marks omitted). "In conducting our review, we may neither reweigh the evidence nor substitute our judgment for that of the agency." *Id*. (brackets and internal quotation marks omitted).

Ms. Romo raises four issues on appeal: (1) whether the ALJ applied correct legal standards in determining the weight given to the opinion of Ms. Romo's treating physician; (2) whether the ALJ applied his own opinion, rather than adhering to the medical opinions of the treating and examining physicians; (3) whether the ALJ applied correct legal standards in assessing Ms. Romo's credibility; and (4) whether the ALJ's decision is supported by substantial evidence.

A. Weight Given to Treating Physician. A treating physician's opinion is generally entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). When evaluating the opinion of any medical source, the ALJ must consider:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing

4

performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (internal quotation marks omitted). The ALJ must provide reasons for the weight assigned to a treating physician's opinion that are sufficiently specific for subsequent reviewers to understand the weight given and the reason for that weight. *Id.*

The ALJ determined that Dr. Leppard's August 2010 opinion should be given little weight for the closed period under consideration. The ALJ provided several reasons for this finding: (1) Dr. Leppard ceased treating Ms. Romo in May 2010—before the start of Ms. Romo's disability onset date—and had no additional information about Ms. Romo's functioning when she issued her August 2010 opinion; (2) there is no indication in her records that Ms. Romo was ever asked to perform any of the functional activities described in Dr. Leppard's opinion; (3) Dr. Leppard's avoidance-of-squatting is unsupported by objective findings and the consultative examiner observed Ms. Romo squat without pain; (4) Dr. Leppard's lumbar findings are inconsistent with her prescribed pain medications and the fact she did not limit Ms. Romo's use of foot controls and driving; and (5) Dr. McElhinney gave his expert opinion that the functional limitations suggested by Dr. Leppard were not consistent with her objective findings, *see* SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996) ("State agency medical and psychological

5

consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims.")

Ms. Romo argues the ALJ's assessment that Dr. Leppard's opinion was inconsistent with other medical records is error; indeed, she argues the opinion was so consistent with all other medical source information that it was entitled to controlling weight. The record does not support her assertion. For example, Ms. Romo asserts Dr. Leppard's opinion that she had to avoid squatting was consistent with the opinion of Dr. Cutter. It is not. Dr. Cutter examined her in August 2011—during the relevant period, unlike Dr. Leppard—and conducted an extensive objective evaluation of Ms. Romo, unlike Dr. Leppard. Dr. Cutter not only did not opine that Ms. Romo had to avoid squatting; to the contrary, she noted that Ms. Romo used good body mechanics when she squatted to pick up something she had accidentally dropped. Dr. Cutter opined that Ms. Romo did not require an assistive device to walk, sat comfortably, arose spontaneously and unaided from a seated position with only mild discernable discomfort; and tests to assess nerve irritation in the lower back were normal.

The record supports the additional reasons given by the ALJ for giving less-than-controlling weight to Dr. Leppard's opinion, namely that that there is no indication in Dr. Leppard's record that she ever performed functional assessments to support the functional analysis in her opinion, and that Dr. Leppard did not treat or examine Ms. Romo during the relevant period to assess disability.

Ms. Romo challenges the ALJ's determination to give partial, moderate weight to the opinion of consulting examiner Dr. McElhinney, but only little weight to Dr. Leppard's opinion. She argues it was clear error for an ALJ to give greater weight to a consultative examiner than to a treating physician. She misstates the law. It is true that an ALJ should, in general, give greater weight to the opinion of a treating physician than to that of a consultant or non-examining physician, *see Langley*, 373 F.3d at 1119, but "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." *See* SSR 96-6P, 1996 WL 374180, at *3. Dr. McElhinney's opinion was based on a review of Ms. Romo's complete case record, in contrast to Dr. Leppard's, which was based on examinations outside of the relevant time period. The ALJ gave specific, legitimate reasons for the weights he gave to the medical source evidence, which are legally sufficient and supported by substantial evidence in the record.

B. <u>ALJ Medical Judgment</u>. Ms. Romo argues the ALJ substituted his own medical judgment, rather than adhering to the medical opinions of Drs. Cutter and Leppard. An "ALJ overstep[s] his bounds [when he enters] the province of medicine." *Miller v. Chater*, 99 F.3d 972, 977 (10th Cir. 1996). Dr. Cutter opined in relevant part that during an eight-hour workday Ms. Romo could only sit for four hours, and only stand or walk two hours. The ALJ concluded that these functional limitations were not supported by objective evidence in Dr. Cutter's examination, which showed that Ms. Romo had no paraspinal tenderness and had a full range of

7

motion, full strength, and only slight sensation loss. Ms. Romo argues this demonstrates that the ALJ substituted his medical judgment for that of Dr. Cutter. We disagree. The ALJ simply determined that Dr. Cutter's sitting, standing, and walking limitations were not supported by objective evidence, which is a legitimate basis for the ALJ to afford the opinion less weight. See 20 C.F.R. § 404.1527(c)(3) (explaining that opinion supported by objective findings are generally entitled to more weight).

Ms. Romo also argues the ALJ substituted his own medical opinion when he discounted Dr. Leppard's opinion because Dr. Leppard never asked Ms. Romo to perform any functional activities. Ms. Romo argues it was up to Dr. Leppard to determine what activities would likely cause Ms. Romo's pain. Again, we disagree with Ms. Romo's characterization of the ALJ's ruling, which was simply a factual statement that Dr. Leppard's medical records did not contain objective support for her functional limitation opinion, which is, as noted, a legitimate basis for the ALJ to afford the opinion less weight. *See id.*

C. Credibility Determination. Ms. Romo next challenges the ALJ's analysis in assessing the credibility of her subjective complaints of disabling pain. Ms. Romo testified at her first hearing that because of her chronic daily pain, she could only sit for 10 to 15 minutes and could only stand for 20 minutes. At her second hearing, she testified that her pain has not changed since before she returned to full-time work. The ALJ questioned the credibility of her subjective complaints of pain in part because Ms. Romo was able to return to a full-time, semi-skilled job after the closed

8

period with the same impairments and the same levels of pain as alleged during the closed period.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (internal quotation marks omitted). An ALJ must consider such factors as a claimant's daily activities; attempts to find relief; the type, effectiveness and side effects of medication; and factors that precipitate and aggravate the symptoms. *Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004). "[F]indings as to credibility should be closely and affirmatively linked to substantial evidence." *Cowan*, 552 F.3d at 1190 (internal quotation marks omitted).

Ms. Romo argues the ALJ's credibility determination was legally flawed because no medical source questioned her honesty and Dr. Cutter specifically found Ms. Romo to be honest and trustworthy. But "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016) (eliminating the use of the term "credibility" for subjective symptom evaluations). Ms. Romo also argues the "mere fact" she was able to return to work for nine months does not support discounting her subjective description of her symptoms. Aplt. Opening Br. at 31. But the ALJ did not base his evaluation on the "mere fact" that she returned to work, but also specifically noted her daily activities at that job, which is a relevant factor for the ALJ to consider.

9

The work history of a claimant is another relevant factor in evaluating a claimant's pain testimony. 20 C.F.R. § 404.1529(c)(3) (in evaluating pain symptoms, the ALJ "will consider all of the evidence presented, including information about your prior work record"). Ms. Romo undoubtedly has chronic pain, but "[t]o be disabling, [the] pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." *Brown v. Bowen*, 801 F.2d 361, 362-63 (10th Cir. 1986) (internal quotation marks omitted). The evidence that Ms. Romo was not precluded from substantial gainful employment even with the same impairments and pain levels as in the period under consideration is, therefore, a relevant consideration. *See Cowan*, 552 F.3d at 1191 ("The ALJ found that Mr. Cowan previously worked with these impairments, which suggests these conditions would not currently prevent work." (internal quotation marks omitted)). We find no error in the ALJ's evaluation of Ms. Romo's subjective descriptions of her symptoms.

D. Substantial Evidence. Ms. Romo's final claim of error is a general assertion that the ALJ's decision is not supported by substantial evidence. But her arguments here simply repeat her previous arguments that the ALJ erred in the weight he assigned to the medical source testimony. Ms. Romo is essentially asking us to reweigh the evidence, which we may not do. We conclude from our review of the record that the ALJ applied the correct legal standards in evaluating the medical source opinions and that substantial evidence supports the ALJ's stated reasons for

the weight given to those opinions. We also conclude that substantial evidence in the record as a whole supports the ALJ's factual findings.

Judgment affirmed.

Entered for the Court


Allison H. Eid
Circuit Judge