**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 22, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

KARL J. PUTNAM,

      Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

      Defendant - Appellee.

No. 18-1379
(D.C. No. 1:17-CV-01821-CMA)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **BALDOCK** and **HARTZ**, Circuit Judges.
_____

Karl J. Putnam appeals from the district court's order affirming the

Commissioner's decision denying his application for Social Security disability

benefits. He filed for these benefits in August 2015, alleging a disability onset date

of June 23, 2015. After the agency denied his application he requested a de novo

hearing before an administrative law judge (ALJ).

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

The ALJ held hearings in August and December 2016. He then entered a decision in which he applied the agency's five-step sequential evaluation process and concluded Mr. Putnam was not disabled.[1] At step one of the process the ALJ determined Mr. Putnam had not engaged in substantial gainful activity since the alleged onset date. At step two he found Mr. Putnam had the severe impairments of bipolar I disorder; cognitive disorder; post-traumatic stress disorder (PTSD); personality disorder; degenerative disc disease, lumbar spine; and tendonitis, left shoulder. But he further concluded at step three that his impairments did not meet or medically equal a listed impairment.

The ALJ evaluated Mr. Putnam's mental impairments and concluded he had mild restriction in his activities of daily living; marked difficulties in his social functioning; mild limitations with regard to concentration, persistence or pace; and had experienced no episodes of decompensation of extended duration. After considering the entire record, the ALJ determined at step four that Mr. Putnam retained the residual functional capacity (RFC)

> to perform light work as defined in 20 CFR 404.1567(b) except the Claimant is able to climb ladder, ropes, and scaffolds occasionally, and is able to climb ramps and stairs frequently. He is able to balance constantly.

---

[1] The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing process). The claimant bears the burden of establishing a prima facie case of disability at steps one through four. *See id.* at 751 n.2. If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains a sufficient residual functional capacity (RFC) to perform work in the national economy, given his age, education and work experience. *See id.* at 751.

He is able to stoop occasionally. He is able to crouch, kneel, and crawl frequently. The claimant is further limited to occasional overhead reaching with his left upper extremity. The claimant is further limited in that he must avoid even occasional use of moving and/or dangerous machinery, and even occasional exposure to unprotected heights. The claimant is further limited to work that consists of only simple, routine, and repetitive tasks. He is able to maintain sufficient attention and concentration for extended periods of two-hour segments during a normal workday with normal breaks. The claimant is further limited to work that requires no more than brief (defined as "of short duration"), and superficial (defined as "occurring at or on the surface"), interaction with the public, and to work that can be around co-workers throughout the workday, but with only occasional interaction with co-workers. He is further limited to work that requires no more than brief and superficial supervision, defined as requiring a supervisor's critical checking of his work.

Admin. R. at 22.[2]

The ALJ further found Mr. Putnam could not return to his past relevant work. But considering his age, education, work experience and RFC, jobs existed in significant numbers in the national economy that he could perform. The ALJ cited testimony from a vocational expert (VE) that an individual with Mr. Putnam's characteristics would be able to perform representative occupations including housekeeper-cleaner, marketing clerk, and routing clerk. Applying the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, Subpt. P, App. 2, rule 202.14 as a framework, the ALJ concluded at step five of the sequential analysis that Mr. Putnam was not disabled within the meaning of the Social Security Act. He therefore denied his application. The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision.

_____

[2] When citing the administrative record, we have used the numbers the agency assigned rather than the numbering system used in the appellant's appendix.

## I. Appellate jurisdiction

The district court entered final judgment on July 16, 2018. Mr. Putnam's notice of appeal (NOA) was due on or before September 14, 2018. *See* Fed. R. App. P. 4(a)(1)(B). He filed the NOA two days late, on September 16. But on October 13, 2018, within 30 days of the deadline to appeal, *see id.* 4(a)(5)(A)(i), he filed a timely motion for extension of time to file the notice of appeal. The district court granted the motion, making this appeal timely.

## II. Issues and Standard of Review

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). In conducting this review we address only those arguments properly preserved in district court and presented on appeal. *See Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004).

Mr. Putnam raises four issues. He argues (1) the ALJ did not apply the correct legal standard or specifically articulate the weight he gave to certain medical opinions; (2) the ALJ improperly attempted to assert Listing 12.09, involving substance addiction, into the proceedings; (3) the ALJ improperly excluded the VE's testimony that there were no jobs available in the economy that he could perform; and (4) the ALJ's decision is not based on substantial evidence.

4

### III. ALJ's evaluation of medical opinions

The record contains several medical opinions concerning Mr. Putnam's mental impairments. MaryAnn Wharry, Psy.D., prepared an evaluation as part of the administrative processing of his claim. But the ALJ assigned little weight to her assessment, noting that Dr. Wharry did not examine Mr. Putnam and had not reviewed the subsequently submitted evidence.

Prior to the August 2016 hearing, Richard B. Madsen, Ph.D., performed a consultative psychological examination. Dr. Madsen opined that Mr. Putnam's short-term auditory memory was impaired. He found Mr. Putnam was moderately to markedly impaired in a variety of mental-related abilities.[3] He further stated that Mr. Putnam would "require additional supervision because of his difficulty relating to authority figures." Admin. R. at 538.

At the August hearing Ronald Houston, Ph.D., testified as an impartial medical expert. Dr. Houston opined that Dr. Madsen's report had "very, very limited value," noting his conclusions were inconsistent with those of a mini-mental status exam

---

[3] He rated Mr. Putnam moderately impaired in maintaining acceptable attendance in the workplace; markedly impaired in performing work activities on a consistent basis and accepting instructions from supervisors; and moderately-to-markedly impaired in completing a normal workday or workweek without interruptions resulting from his psychiatric conditions, interacting with coworkers and the public, and dealing with the usual stresses encountered in a competitive work environment. He also stated his "ability to perform detailed and complex tasks [on a] consistent basis over an extended period of time is impaired [at a] remarkable level" and that "[h]is ability to perform simple and repetitive tasks on a consistent basis over an extended period of time is impaired at a moderate level." Admin. R. at 537.

performed by the consultative physical examiner, Rosemary Greenslade, M.D. *Id.* at 74. Dr. Houston stated "for me this record is entirely confounded, complicated and conflicted, and my suggestion here is that we're going to need another [consultative examination]." *Id.* The ALJ took his suggestion and ordered an additional consultative examination, postponing the hearing to receive the results.

R. Terry Jones, M.D., performed the supplemental consultative examination of Mr. Putnam and submitted a report of his findings. He found only mild impairments in Mr. Putnam's ability to understand, remember, and carry out instructions, noting that although Mr. Putnam had "subjective concerns about memory," these were unsupported by objective findings on the formal mental status examination. *Id.* at 725. Dr. Jones found moderate-to-marked limitations on Mr. Putnam's ability to deal with the public, supervisors, and co-workers, noting his "[h]istory of difficulty with anger management issues." *Id.* at 727. The ALJ assigned great weight to Dr. Jones' assessment, finding it "consistent with the medical record describing [his] difficulty interacting with others." *Id.* at 26.

The ALJ then held a second hearing. At the hearing Dr. Houston further discussed Mr. Putnam's mental restrictions. Based on this testimony and the other evidence, the ALJ concluded that Mr. Putnam's mental RFC limited him to "simple, routine, and repetitive tasks," to concentration for two-hour segments, and to limited contact with the public and co-workers and limited interaction with supervisors. *Id.* at 22.

In reaching his decision, the ALJ was required to "give consideration to all the medical opinions in the record [and] . . . discuss the weight he assign[ed] to such opinions." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citations omitted). Although the ALJ discussed and evaluated each medical opinion, *see* Admin. R. at 24-27, Mr. Putnam contends his discussion was deficient.

He argues, first, that the ALJ provided an inadequate reason for the weight he assigned to Dr. Madsen's assessment. Although he accepted Dr. Madsen's opinion that Mr. Putnam had marked limitations in social functioning—an impairment highlighted by the other consultants as well as Dr. Madsen[4]—the ALJ assigned little weight to the remainder of his opinion, finding it "inconsistent with other contemporaneous medical evidence showing improvement in his symptoms and intact memory." Admin. R. at 24. The ALJ cited three medical exhibits in support of this conclusion, including Dr. Greenslade's mental status exam. *See id.*

Mr. Putnam argues these exhibits merely showed isolated instances of improvement and that the ALJ ignored other consistent evidence of his ongoing difficulties with memory and with completing work responsibilities. Although the

---

[4] Dr. Jones, for example, noted that Mr. Putnam had been "diagnosed with multiple other diagnoses including bipolar disorder, seasonal affective disorder, OCD, ADHD, and posttraumatic stress disorder," but concluded that his symptoms were "best explained by his borderline personality disorder." Admin. R. at 719. The principal work-related issue Dr. Jones identified related to his borderline personality disorder was that he had "anger control" issues, which surfaced in his conflicts with supervisors, coworkers, and the public. *Id.* at 723. At the hearing, Mr. Putnam's attorney asked Dr. Houston about Mr. Putnam's history of job loss. Dr. Houston explained that he thought these problems related to "the social interaction aspect of work." *Id.* at 100.

ALJ specifically cited these three exhibits, the record contains other evidence supporting his conclusions. Although Mr. Putnam complained of memory difficulties, *see e.g.*, *id.* at 581, 659, 765, 858, his treatment providers repeatedly noted that his memory was intact, *see id.* at 428, 582, 588, 594, 660, 715, 717, 899. Various medical records note improvement of his symptoms with treatment. *See id.* at 586, 788, 815, 863. Dr. Jones, who examined Mr. Putnam, also concluded that his concentration and memory were within normal limits. *See id.* at 721. The ALJ further cited Dr. Houston's testimony that Dr. Madsen's opinion was inconsistent with the medical record. In sum, the ALJ adequately discussed Dr. Madsen's opinion and his conclusions were supported by substantial evidence.

Mr. Putnam also argues that Dr. Madsen's opinion, as an examining source, was presumptively entitled to greater weight than Dr. Houston's opinion, which was based only on a review of the medical record. But an examining source's medical-source opinion "may be dismissed or discounted" if the ALJ properly evaluates it and provides "specific, legitimate reasons for rejecting it." *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (internal quotation marks omitted). As noted, the ALJ provided such reasons here.

Finally, Mr. Putnam contends the ALJ failed to explain how he resolved conflicts between the consultants' opinions concerning specific work-related mental functions. *See* Aplt. Opening Br. at 29-31.[5] The ALJ's reasons for rejecting

---

[5] He complains the ALJ did not sufficiently discuss Dr. Jones' assignment of a moderate limitation in social interaction as opposed to Dr. Houston's assignment of a

8

Dr. Madsen's opinion sufficiently addressed the specific work-related functions

Mr. Putnam has identified.[6] To the extent Mr. Putnam argues that the ALJ was

required to further explain how he resolved conflicts between Dr. Madsen's rejected

opinion and the other medical opinions concerning each specific mental function, we

disagree. *Cf. Chapo*, 682 F.3d at 1288 ("[T]here is no requirement in the regulations

for a direct correspondence between an RFC finding and a specific medical opinion

on the functional capacity in question. The ALJ, not a physician, is charged with

determining a claimant's RFC from the medical record." (alterations and internal

quotation marks omitted)). In sum, Mr. Putnam has failed to show reversible error in

the ALJ's evaluation of the medical evidence.

## IV. Substance Addiction Issues

Mr. Putnam complains that "[t]he ALJ repeatedly attempted to assert substance

addiction as a diagnosis" in his case. Aplt. Opening Br. at 32. He asserts the ALJ

improperly (1) discounted Dr. Madsen's opinion because it did not include substance

---

marked limitation in this area. But because the ALJ adopted Dr. Houston's more severe limitation, any error in this regard was harmless.

[6] Mr. Putnam's citation to an unpublished case, *Trujillo v. Colvin*, 626 F. App'x 749 (10th Cir. 2015), is unavailing. There, a medical expert provided *separate* medical opinions concerning different work-related abilities during portions of his hearing testimony. *See id.* at 751 ("The opinions expressed in direct-examination and cross-examination were distinct."). In his decision, the ALJ addressed only one of the opinions, while ignoring an opinion about different abilities that had been elicited on cross-examination. *See id.* Because we could not say the ALJ's failure to discuss the separate opinion was harmless error, we remanded for further consideration. *See id.* at 752-53. Here, Dr. Madsen rendered a single opinion. The ALJ gave acceptable reasons for assigning little weight to the entire opinion (except for its conclusion about social limitations, which he accepted).

abuse, (2) discussed substance abuse at the hearings in his case, (3) adjourned the first hearing due to concerns about substance abuse, and (4) included references to drug use in his decision. He argues these actions were improper because (a) his alcohol use was in remission, (b) Dr. Houston testified that the symptoms relative to his personality disorder would be the same with or without marijuana use, (c) listing 12.09 concerning drug and alcohol abuse has been removed from the Listings, (d) he has a medical marijuana license, and (e) his doctors have told him that his marijuana use is effective for his pain and mania.

Mr. Putnam's arguments fail for several reasons. First, at the time of the ALJ's decision, substance addiction disorders continued to be addressed under listing 12.09. The new rules for mental listings, including the deletion of Rule 12.09 as a substance addiction listing, did not begin to apply until January 17, 2017, after the ALJ had issued his decision. *See Revised Mental Criteria for Evaluating Mental Disorders*, 81 Fed. Reg. 66138 & n.1 (Sept. 26, 2016) (stating the new rules are effective January 17, 2017, and that federal courts should review agency decisions using the rules in effect at the time of the agency's decision); *id.* at 66152 (discussing removal of listing 12.09).

Second, the ALJ properly raised an issue about marijuana and alcohol abuse based on evidence concerning these issues in the record. In addition to Listing 12.09, the applicable statutes and regulations required him to consider whether drug addiction or alcoholism was a contributing factor material to the determination of disability. *See* 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 404.1535.

10

Finally, as the district court noted, the ALJ did not conclude that Mr. Putnam had a severe substance abuse impairment. We conclude that the ALJ's references to substance abuse do not require reversal.[7]

## V. Hypothetical Question to Vocational Expert

The ALJ posed three hypothetical questions to the VE. In the third hypothetical, he asked the VE to assume that "due to a combination of medical conditions [including] . . . mental impairments this individual will require on average two additional breaks each workday of a duration of between 10 and 15 minutes each in addition to regularly scheduled breaks, and will require more than one or two unscheduled or unexcused absences per month." Admin. R. at 106-07. The VE replied there were no unskilled occupations such an individual could perform.

The ALJ ultimately relied on the VE's answer to a different hypothetical question, which did not include the need for additional breaks or unscheduled absences. Mr. Putnam argues the ALJ should instead have used the VE's answer to the third hypothetical question. But an ALJ is not required to rely on a hypothetical question that includes limitations that go beyond those in his ultimate RFC assessment. *See, e.g.*, *Smith v. Colvin*, 821 F.3d 1264, 1270 (10th Cir. 2016). Because the ALJ's RFC assessment did not include the need for additional breaks or

---

[7] Although Dr. Houston expressed doubt concerning Dr. Madsen's opinion because he did not factor use of alcohol into his conclusions and recommendations, *see* Admin. R. at 74, the ALJ did not rely on this factor when assigning weight to Dr. Madsen's opinion in his written decision.

unscheduled absences, he did not err in failing to rely on the VE's answer to his third hypothetical question.

Although Mr. Putnam further claims that his conditions *do* require the additional daily breaks and unscheduled absences—implicitly contending they should have been included in his RFC—the only evidence he cites for this is his testimony about his need to attend weekly counseling sessions. This is insufficient to show the ALJ erred in omitting the proposed restrictions from his RFC assessment. *Cf. Barnett v. Apfel*, 231 F.3d 687, 691 (10th Cir. 2000) (holding ALJ did not err by failing to consider claimant's absenteeism where no evidence concerning it was presented during the hearing).

In addition, although Mr. Putnam claims the third question provided "an adequate reflection of [his] situation," Aplt. Opening Br. at 35, he makes an alternative argument. He argues that even the third hypothetical he prefers was deficient, because it was insufficiently specific about his mental health impairments. *See id.* This objection appears to be irrelevant, given that the ALJ did not rely on the answer to the third hypothetical. In any event, the ALJ's *second* hypothetical question included, nearly word for word, those mental limitations he recognized in his RFC. We discern no reversible error.

**VI. Substantial Evidence**

Finally, Mr. Putnam argues that the ALJ's decision is unsupported by substantial evidence. Substantial evidence requires "more than a scintilla, but less than a preponderance." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir.

12

2014) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record." *Id.* (internal quotation marks omitted). But to the extent Mr. Putnam urges us to reweigh the evidence, we cannot. *See Smith*, 821 F.3d at 1266 ("[I]n making [the substantial-evidence] determination, we cannot reweigh the evidence or substitute our judgment for the administrative law judge's.").

Mr. Putnam raises several specific challenges to the ALJ's RFC assessment. He complains that the ALJ improperly concluded he has only mild difficulties with concentration, persistence, or pace. He cites his subjective complaints about memory problems. But as previously noted Dr. Jones found these concerns unsupported by objective findings on a formal mental status examination.

Mr. Putnam complains of difficulties he experienced on the job due to making mistakes. From the examples he cites, it appears he encountered these difficulties during time periods when he performed his past relevant work. The ALJ found he could not perform any of his past relevant work and limited him instead to jobs that required only simple, routine, and repetitive tasks. Mr. Putnam fails to show that his tendency to make mistakes during his previous employment fatally undermined the ALJ's RFC assessment.

Mr. Putnam cites his symptoms such as frustration and agitation, difficulty staying organized and completing tasks, and difficulty beginning tasks. He argues that his ability to perform activities of daily living is more nuanced than the ALJ's findings suggest. He also refers us to observations about his mental condition that

13

were made by a health-care provider during an initial assessment, before he received treatment. None of this evidence undermines the substantial evidence supporting the ALJ's conclusions, which included his evaluation of both the medical evidence and the expert medical opinions in the record.

The ALJ could not simply ignore contrary evidence. *See Haga v. Astrue*, 482 F.3d 1205, 1207 (10th Cir. 2007) (although "the ALJ is not required to discuss every piece of evidence," he "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects" (internal quotation marks omitted)). But the ALJ analyzed the evidence at length. *See* Admin. R. at 23-24. We cannot reverse simply because we might have reached a different result based on this record. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). In sum, the ALJ's conclusions were supported by substantial evidence and must be affirmed.

## VII. Conclusion

The district court's order affirming the Commissioner's denial of benefits is affirmed. Mr. Putnam's motion to proceed in forma pauperis is granted.

Entered for the Court


Bobby R. Baldock
Circuit Judge

14