FILED
United States Court of Appeals
Tenth Circuit

March 17, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

SHANNON WILLIAMS,

     Plaintiff - Appellant,

v.

Nancy A. Berryhill, Acting Commissioner
of Social Security,[*]

     Defendant - Appellee.

No. 16-1137
(D.C. No. 1:14-CV-01984-NYW)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[**]
_____

Before **KELLY**, **HARTZ**, and **O'BRIEN**, Circuit Judges.[***]
_____

Shannon Williams appeals from a judgment of the district court affirming the

Commissioner's denial of her application for Social Security disability benefits and

supplemental security income benefits. She alleged disability in August 2010, at age

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Carolyn Colvin is substituted for Nancy A. Berryhill as Acting Commissioner of Social Security.

[**] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[***] Judge Hartz concurs in the Order and Judgment, Judge O'Brien concurs in the result only.

28, based on multiple impairments including seizures, back problems, and bipolar disorder. The administrative law judge (ALJ) found that Ms. Williams could perform sedentary work with occasional bending, squatting, and use of foot/leg controls, provided she was not exposed to unprotected heights, dangerous machinery, or other workplace hazards. A vocational expert testified that Ms. Williams could perform several jobs that exist in significant numbers in the national economy. Following the ALJ's decision that Ms. Williams was not disabled, the Appeals Council denied her request for review. She then filed a complaint in the district court, which affirmed the Commissioner's decision.

On appeal, Ms. Williams argues the ALJ: (1) failed to consider at step three whether her conversion disorder met Listing 12.07 (somatoform disorders); (2) failed to adequately develop the record; (3) made a residual functional capacity (RFC) finding regarding her physical limitations at step four that is not supported by substantial evidence; and (4) failed at step four to properly assess her mental limitations, including her conversion disorder, in formulating her RFC. Exercising jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we reverse and remand.

## STANDARD OF REVIEW

"We review the ALJ's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006) (internal quotation marks omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. However,

2

a decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* (citation and internal quotation marks omitted).

## LISTING 12.07

We agree with Ms. Williams that the ALJ misapplied the law when he failed to consider whether her conversion disorder met or equaled Listing 12.07. "At the third step [of the five-step evaluation process], we [will] consider the medical severity of your impairments(s). If you have an impairment(s) that meets or equals one of our listings in appendix I of this subpart and meets the duration requirement, we will find that you are disabled." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). *See also Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) ("Step three asks whether any medically severe impairment, alone or in combination with other impairments, is equivalent to any of a number of listed impairments so severe as to preclude substantial gainful employment." (internal quotation marks omitted)).

Beginning in mid-2010 and continuing through mid-2012, Ms. Williams had numerous episodes involving what she described as seizures. She went to the emergency room on no fewer than twelve occasions complaining of seizure-like incidents. When no testing (diagnostic or laboratory) or neurological examinations disclosed any physiological basis for the seizures, Ms. Williams was diagnosed with conversion disorder.

Conversion disorder is a somatoform disorder. It involves symptoms or deficits affecting voluntary motor or sensory functions that suggest a neurologic or

3

other general medical condition. But following a thorough evaluation, which includes a neurological examination and appropriate laboratory and radiographic diagnostic tests, no neurologic explanation exists for the symptoms, or the examination findings are inconsistent with the complaint. One type of conversion disorder involves seizures or convulsions. *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) at 492-98 (DSM-IV-TR).

Listing 12.07 recognizes conversion disorder as a disorder that may be per se disabling. In relevant part, it provides:

> 12.07 *Somatoform Disorders*: Physical symptoms for which there are no demonstrable organic findings or known physiological mechanisms.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
>
> A. Medically documented by evidence of one of the following: . . .
>
> 2. Persistent nonorganic disturbance of one of the following: . . .
>
> e. Movement and its control (e.g., coordination, disturbance, psychogenic seizures, akinesia, [or] dyskinesia)
>
> AND
>
> B. Resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining concentration, persistence, or pace; or
>
> 3. Marked difficulties in maintaining social functioning; or
>
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. § 404, Subpt. P, App. I, § 12.07.

The Commissioner argues that the ALJ did not need to discuss Listing 12.07 because "no mental health professional affirmatively diagnosed her with a somatoform disorder." Aplee. Br. at 22. We disagree. For example, in August 2010, an emergency room physician stated "there is a good chance [her seizures] could be a variant of pseudoseizure," Aplt. App., Vol. 3 at 579, and following a consultation with a neurologist, Ms. Williams was diagnosed with conversion disorder, *see id*. at 592-93. In November 2010, an emergency room physician noted that Ms. Williams "presents with known psychiatric type condition," and acknowledged the previous diagnoses of conversion disorder. *Id*. at 628. And in November 2011, yet another emergency room physician noted that her neurologist had made a diagnosis of conversion disorder. *Id*. at 721-22.

Further, the Commissioner argues that even if Ms. Williams was diagnosed with conversion disorder, she did not meet the B criteria of Listing 12.07. But the only evidence in the record is an assessment from a state agency psychologist who considered whether she met the criteria for Listing 12.04 (affective disorders), *see id*., Vol. 1 at 111, and the only Listings the ALJ considered were Listings 1.00 (musculoskeletal disorders) and Listing 11.00 (neurological disorders), *id*. at 55.

We acknowledge that the failure to mention a particular Listing is not always fatal. For example, in *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008), we held that "[t]he ALJ's [failure to identify the relevant Listing or discuss the evidence] would be harmless [error] if findings he made elsewhere conclusively negated [the] claim under [the] Listing [that was not considered]." But there are no findings that

5

conclusively negated Ms. Williams's claim under Listing 12.07, and we must reverse the district court's affirmance of the ALJ's decision and remand to the Commissioner for further proceedings at step three.

### FAILURE TO DEVELOP THE RECORD

We also agree with Ms. Williams that the ALJ should have ordered consultative examinations. The Commissioner "may purchase a consultative examination . . . when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim." 20 C.F.R. § 404.1519a(b), 20 C.F.R. § 416.919a(b). Clearly, the existing evidence is not sufficient to make a determination of Ms. Williams's claim. For example, there is no medical evidence about her conversion disorder, including its severity and how it affects her ability to function.

The Commissioner urges us to overlook whether the examinations are needed because Ms. Williams's lawyer failed to raise the issue with the ALJ, citing *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997) ("In the absence of . . . a request by counsel, we will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record.")). However, there is a clear need for the examinations. Where an ALJ has "no evidence upon which to make a finding as to RFC, [he] should . . . exercise his discretionary power to order a consultative examination . . . to determine [the claimant's] capabilities." *Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993). The ALJ should order consultative examinations to properly consider the diagnosed conversion disorder at

6

step three, and, if the analysis continues beyond step three on remand, consultative examinations necessary for a proper RFC should also be ordered.

Our reversal and remand is at step three. Nonetheless, we address Ms. Williams's arguments regarding her RFC should the ALJ's analysis on remand proceed beyond step three and he is required to evaluate her RFC at step four.

## PHYSICAL RFC

Ms. Williams argues that the ALJ's findings regarding her physical RFC, and in particular her capacity to sit without considerable pain, were not supported by substantial evidence. We agree.

Ms. Williams testified that she can stand "about 25 to 30 minutes," and sit for about "25 minutes," without pain. Aplt. App., Vol. 1 at 78.[1] But the ALJ rejected her testimony in favor of the assessment of a state agency disability examiner as support for his finding that Ms. Williams could perform sedentary work: "The State agency disability examiner stated [that Ms. Williams] could sit for more than six hours of an eight hour day and stand/walk for more than six hours of an eight hour day." *Id.* at 57. He gave "[s]ome weight to this assessment." *Id.*

According to Ms. Williams, the ALJ improperly relied on the state agency assessment because it was performed by a non-acceptable source—"Carlos Clarke, SDM." *Id.* at 114. The Commissioner argues that it does not matter whether Mr. Clarke is an acceptable source, because there is "substantial evidence in the

---

[1] Sedentary work typically involves a good deal of sitting. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a).

7

record, apart from [Mr. Clarke's] opinion, [that] supports the ALJ's finding that Williams could perform sedentary . . . work." Aplee. Br. at 26. But the Commissioner fails to cite any evidence that supports Mr. Clarke's opinion, and we have found none.[2]

The issue therefore is whether Mr. Clarke's opinion was sufficient to support the ALJ's physical RFC assessment. It was not. The Commissioner "may use evidence from 'other sources,' as defined in 20 C.F.R. §§ 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). State disability examiners like Mr. Clarke, however, are not among the "other sources" that can provide such evidence.[3] Therefore, the ALJ's physical RFC assessment was not supported by substantial evidence and should the ALJ's assessment on remand proceed beyond step three, a consultative examination may be needed to properly determine Ms. Williams's RFC.

## MENTAL RFC

---

[2] The Commissioner also argues that Ms. Williams forfeited any argument about the ALJ's reliance solely on Mr. Clarke's assessment because she failed to raise it in the district court. However, we construe her argument that the physical RFC finding was not supported by substantial evidence, to include Mr. Clarke's assessment, whether or not it was specifically mentioned.

[3] These sources include medical sources such as nurse practitioners, physician's assistants, naturopaths, chiropractors, audiologists, and therapists; education personnel; public and private social welfare agency personnel; and spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy. *See* 20 C.F.R. §§ 404.1513(d), 416.913(d).

With regard to her mental impairments, Ms. Williams argues that even if her conversion disorder does not meet the criteria of Listing 12.07, the ALJ misapplied the law because he failed to consider this impairment in formulating her RFC at step four. Again, we agree, and if the ALJ's analysis on remand proceeds beyond step three, he will need to consider Ms. Williams's conversion disorder in his RFC determination. "[I]n assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe*." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). The ALJ's failure to consider Ms. William's conversion disorder, "singly and in combination with her other impairments, requires that we reverse." *Salazar*, 468 F.3d at 622.

As to her other mental impairments, Ms. Williams argues that the ALJ also failed to adequately consider and discuss them as part of his RFC assessment. At step two, the ALJ summarized Ms. Williams's mental health records and concluded that she did not have a severe mental impairment. *See* Aplt. App., Vol. 1 at 54. But "the Commissioner's procedures do not permit the ALJ to simply rely on his finding of non-severity as a substitute for a proper RFC analysis." *Wells*, 727 F.3d at 1065. Instead, "the mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 Listing of Impairments and summarized on the Psychiatric Review Technique Form." *Id*. (brackets omitted). Last, "and most

9

importantly, the ALJ's RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical facts." *Id*. (internal quotation marks omitted).

The ALJ's step four analysis states:

> The State agency physician completed an assessment of the claimant to ascertain whether or not the claimant's mental impairment(s) met the requirements for a Listing level impairment. The [psychologist] assessed mild restrictions in the claimant's activities of daily living; mild restrictions in the ability to maintain social functioning; and mild limitations maintaining concentration, persistence or pace. The claimant had had no periods of decompensation, each of extended duration. This is consistent with the records as a whole and is given significant weight.

Aplt. App., Vol. 1 at 57.

What is missing from the assessment is any discussion of the evidence that supports the conclusion. As such the ALJ's conclusions are not supported by substantial evidence.

The ALJ did not consider Ms. Williams's conversion disorder and otherwise failed to properly assess her mental RFC. If on remand the ALJ has reason to reach step four, this error should not be repeated.

The judgment of the district court is reversed at step three and the case is remanded with instructions to remand to the Commissioner for additional proceedings consistent with this Order and Judgment.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

10