**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

SHANNON CHRISTINA GOLDEN-
SCHUBERT,

    Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

    Defendant - Appellee.

No. 18-1415
(D.C. No. 1:17-CV-01318-KMT)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **BACHARACH**, and **McHUGH**, Circuit Judges.
_____

Claimant Shannon Christina Golden-Schubert appeals from an order of a

magistrate judge[1] affirming the Commissioner's decision denying her application for

disability insurance benefits (DIB) and supplemental security income (SSI).

Exercising jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] The parties agreed to proceed before the magistrate judge under 28 U.S.C. § 636(c).

## I.

Claimant alleges disability due to fibromyalgia and bipolar disorder. She applied for DIB and SSI on May 18, 2016 alleging an onset date of March 15, 2015. The agency initially denied her application on September 21, 2016. On January 10, 2017, claimant received a de novo hearing before an administrative law judge (ALJ). The ALJ determined claimant was not disabled within the meaning of the Social Security Act. The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision for purposes of our review.

## II.

To determine disability, the Commissioner employs a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (explaining the five steps in detail). In this case, the ALJ determined that claimant was not disabled at step five. At step four, the ALJ found that claimant had the residual functional capacity (RFC) to perform unskilled or semi-skilled sedentary work involving no contact with the general public and no more than occasional contact with coworkers and supervisors. With this RFC, the ALJ determined that claimant could not perform her past work as an attorney. But, proceeding to step five, the ALJ concluded claimant was not disabled because she could perform other jobs available in significant numbers in the national economy, such as document preparer, collator operator, and general office clerk.

We review the Commissioner's decision "to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (internal quotation marks omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). In determining whether substantial evidence supports the Commissioner's findings, we meticulously examine the record as a whole, but "we may neither reweigh the evidence nor substitute our discretion for that of the Commissioner." *Id.* (alterations and internal quotation marks omitted).

In this appeal, claimant argues that the ALJ erred in formulating her RFC at step four in two respects. First, she argues the ALJ did not properly weigh the medical opinion evidence. Second, she argues the ALJ failed to consider the limitations of all of her severe and non-severe medically determinable impairments in formulating her RFC.

**A. Weight of Opinion Evidence**

An ALJ must evaluate every medical opinion in the record. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). In deciding what weight to give a medical opinion, the ALJ must consider all of the factors set forth in §§ 404.1527(c) and 416.927(c).[2] The weight the ALJ gives to each opinion depends, in part, on the relationship between

---

[2] Those factors are: (1) examining relationship; (2) treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. 20 C.F.R. §§ 404.1527(c), 416.927(c).

3

the claimant and the medical professional. Generally, a treating physician's opinion is given more weight because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations." 20 C.F.R. § 404.1527(c)(2); *see also* § 416.927(c)(2) (same).

The ALJ must give a treating physician's opinion controlling weight if it is "supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1176 (10th Cir. 2014). If an ALJ does not give controlling weight to a treating physician's opinion, "the ALJ must explain what weight, if any, was assigned to the opinion using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927." *Knight*, 756 F.3d at 1176-77 (internal quotation marks omitted). "Specifically, the ALJ must give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion, and if he rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Id.* at 1177 (internal quotation marks omitted).

Claimant argues the ALJ (1) failed to give controlling weight to the opinion of her treating psychiatrist, Dr. Richard Suddath; (2) did not articulate sufficient reasons for giving significant weight to the state's nonexamining psychological consultant,

4

Dr. Douglas Hanze; and (3) failed to give any weight to her treating physician, Dr. Jill Siegfried.

 1. Dr. Suddath

Dr. Suddath began treating claimant in July 2016. He provided an assessment of claimant's functional limitations in a mental RFC form and a written narrative.[3] According to Dr. Suddath, claimant is suffering from a "prolonged episode of rapid cycling, mixed state bipolar disorder." Aplt. App. Vol. 6 at 1352. In the mental RFC form, Dr. Suddath indicated that claimant could perform the following activities only five to 20 percent of the time: work in coordination with others without undue distraction, interact appropriately with the general public, perform repetitive or short cycle work, sustain an ordinary routine without special supervision, maintain attention for two-hour periods, maintain regular attendance, set realistic goals, and carry out short and simple instructions. He indicated that she could accept instructions and criticism from supervisors 50 percent of the time, maintain socially appropriate behavior 40 percent of the time, and get along with coworkers 30 percent of the time, but he also indicated she could tolerate interactions with supervisors and coworkers "frequently." Id. at 1350. In addition, Dr. Suddath indicated that claimant's functional limitations would cause her to miss work more than four days per month. In his written narrative, Dr. Suddath opined that claimant is "unable to do

_____

[3] The mental RFC form is dated November 20, 2016. The accompanying narrative is dated November 18, 2018, long after the ALJ issued his decision. As claimant notes in her opening brief, the date on the narrative should be November 18, 2016.

any job" due to "excessive emotionality that includes frequent bouts of tearfulness alternating with bouts of irritability and loss of temper." *Id.* at 1356.

Dr. Suddath also testified at the hearing before the ALJ on January 10, 2017. He testified that in his opinion claimant met Listing 12.04 because she met the criteria in both (A)(1) and (A)(2) of that listing as well as the criteria in (B).[4] Specifically, Dr. Suddath stated that claimant exhibits symptoms of depression set forth in (A)(1) including excessive sleep, social withdrawal, sadness, cheerfulness, suicidal ideation and thoughts, hopelessness, worthlessness, psychomotor agitation, slowing retardation, decreased energy, feelings of guilt and worthlessness, problems concentrating, and mild reappearing paranoia. He had also observed classic symptoms of mania in (A)(2) including all the symptoms set forth in (A)(2)(a) through (g).[5] Dr. Suddath opined that claimant's category (A) limitations, especially

---

[4] A claimant can meet Listing 12.04 by satisfying the criteria in either (A) and (B) or (A) and (C). *See* 20 C.F.R. Part 404, Subpart P, App. 1, § 12.04. With regard to the (A) criteria, a claimant must satisfy the requirements of either (A)(1) or (A)(2). *Id.* § 12.04(A).

[5] These are:
  a. Pressured speech;
  b. Flight of ideas;
  c. Inflated self-esteem;
  d. Decreased need for sleep;
  e. Distractibility;
  f. Involvement in activities that have a high probability of painful consequences that are not recognized; or
  g. Increase in goal-directed activity or psychomotor agitation.

20 C.F.R. Part 404, Subpart P, App. 1, § 12.04(A)(2)(a)-(g).

her impulsiveness, impair her daily living activities and occupational and social functioning.

Dr. Suddath further testified that claimant suffers marked limitation in all of the category (B) criteria,[6] and these are "pretty close to [] severe in terms of activities of daily living and social functioning." *Id.* Vol. 1 at 44. He noted that her problems of concentration and persistence fit with her repeated episodes of decompensation during which "[s]he might have two or three good days . . .[a]nd then go into a major depression and not be able to show up for appointment[s], or be late to things, or, you know, follow up on just almost anything." *Id.* at 44-45.

The ALJ expressly gave Dr. Suddath's opinion little weight, notwithstanding his treatment relationship with claimant, because he found it inconsistent with mental health treatment records, inconsistent with a neuropsychological evaluation by psychologist Dr. Holly Brown,[7] inconsistent with claimant's admitted abilities, and internally inconsistent. Specifically, the ALJ found that Dr. Suddath's opinion was "inconsistent with mental-health treatment records showing that the claimant consistently demonstrates logical thought processes, unremarkable thought content,

---

[6] These are:
1. Understand, remember, or apply information.
2. Interact with others.
3. Concentrate, persist, or maintain pace.
4. Adapt or manage oneself.

20 C.F.R. Part 404, Subpart P, App. 1, § 12.04(B)(1)-(4).

[7] Claimant was referred to Dr. Brown in December 2015 by her family for an evaluation of her mental status.

7

good attention and memory, cooperative behavior, and a good fund of knowledge." *Id.* Vol. 1 at 26. He found it "inconsistent with the results of Dr. Brown's neuropsychological testing, which demonstrated that the claimant has a superior IQ, a high average working memory, and the ability to persist at tasks without distraction." *Id.* He found it inconsistent with claimant's admitted abilities to "live[] independently, maintain[] her residence, help[] care for her children, keep[] track of and shop[] for necessities, manage[] her finances, drive[] and cycle[] from place to place, and manage[] her medications and appointments." *Id.* at 25. And he found the opinion internally inconsistent with regard to the social limitations Dr. Suddath assessed. As support for these findings, the ALJ pointed to mental health treatment records from Dr. Brian Anderson, a psychiatrist who treated claimant between October 2015 and March 2016, mental health treatment records from various providers at Mental Health Partners, who treated claimant between April and July 2016, Dr. Brown's report, claimant's hearing testimony, and a function report completed by claimant in August 2016.

Claimant disputes the inconsistencies identified by the ALJ. She asserts that the ALJ cherrypicked from a voluminous record to choose moments of functioning while ignoring evidence of nonfunctioning within the same documents, mischaracterized Dr. Brown's report, improperly relied on her daily activities, and misread internal inconsistencies into Dr. Suddath's opinion.

We have thoroughly reviewed the record and we are not persuaded. Mental status examinations by Dr. Anderson and the providers at Mental Health Partners

8

consistently reflect normal attention and concentration, intact memory, good fund of knowledge and generally cooperative behavior. Throughout her testing of claimant, Dr. Brown observed that claimant "persisted on all of the tasks" and "was engaged and did not appear distracted." *Id.* Vol. 2 at 425-26. In addition, Dr. Brown's test of intellectual functioning revealed that claimant's working memory—"ability to sustain attention, concentrate, and exert mental control[—]is in the high average range."[8] *Id.* at 428. Claimant described her daily activities[9] as "try to look for job, care for children, run errands, catch up on the news, volunteer, struggle with my teenagers, grocery shop, fix meals, care for house and lawn as best as I can." *Id.* at 269. She also managed her finances and medications, occasionally practiced yoga with friends, and drove and cycled from place to place.

Even if we might have viewed some of the evidence differently, it is not our task to reweigh the evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001). Claimant's mental health treatment records, the objective observations in

---

[8] Claimant points to portions of Dr. Brown's report describing her "as having substantial difficulty holding an appropriate amount of information in mind or in 'active memory' for further processing, encoding, and/or mental manipulation," Aplt. App. Vol. 2 at 430, and as having "marked difficulties [with] attention and moderate difficulties with hyperactivity and impulsivity," *id.* at 431. But these descriptions were based on self-reporting by claimant and reporting by her mother, respectively.

[9] Claimant contends the ALJ improperly relied on her daily activities. "[An] ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain." *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993). But that was not the purpose of the ALJ's reference to her daily activities here. Rather, the ALJ properly considered claimant's admitted abilities with regard to her daily activities for purposes of evaluating the consistency of Dr. Suddath's opinion with the evidence in the record.

Dr. Brown's report, claimant's admitted abilities to live independently and manage daily activities, and Dr. Suddath's inconsistent assessment with regard to claimant's tolerance for interaction with coworkers all support the ALJ's determination that Dr. Suddath's opinion was inconsistent with substantial evidence in the record.

Claimant also contends that even if Dr. Suddath's opinion was not entitled to controlling weight, the ALJ failed to adequately apply the factors set forth in 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) because he relied only on consistency and did not address the other five factors. An ALJ is not required to expressly discuss each factor in deciding what weight to give a medical opinion. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Here, the ALJ acknowledged that Dr. Suddath was a treating psychiatrist and expressly gave Dr. Suddath's opinion little weight due to the inconsistencies described above. This, along with the ALJ's citation to the inconsistent evidence, "satisfies the requirement that the ALJ's decision be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (internal quotation marks omitted). The ALJ thus applied the correct legal standard in weighing Dr. Suddath's opinion.

In sum, the ALJ's decision to give Dr. Suddath's opinion little weight was not contrary to the law and was supported by substantial evidence.

2. Dr. Hanze

Dr. Hanze, the State agency's nonexamining psychological consultant, opined that claimant's "[s]ymptoms may interfere with completion of a normal workday or

10

workweek or may cause inconsistent pace. However, when work does not involve tasks of more than limited complexity and attention to detail, limitations of attendance and pace will not prevent the completion of a normal workday/workweek or significantly reduce pace." Aplt. App. Vol. 1 at 97. Dr. Hanze further opined that "[c]laimant can perform at a consistent pace without an unreasonable number and length of rest periods when work demands are within [mental RFC] restrictions." *Id.* The ALJ gave significant weight to Dr. Hanze's opinion because it was "consistent with the claimant's generally unremarkable mental-status, with her superior intelligence and intact cognition, with her daily activities, with her reported symptomology, and with evidence that her mood-stabilizing medications are effective." *Id.* at 26-27. In support, the ALJ cited Dr. Brown's report, Dr. Anderson's medication management records, treatment records from Mental Health Partners, and claimant's function report.

As with Dr. Suddath, claimant argues that the ALJ did not adequately apply the factors set forth in 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) because he relied only on consistency and did not address the other five factors. However, the ALJ implicitly acknowledged that Dr. Hanze was neither an examining source nor a treating source when he noted that Dr. Hanze was a psychological consultant who had reviewed the record. As with Dr. Suddath, the ALJ specified the weight he gave to Dr. Hanze's opinion, articulated the reason for that weight, and cited those portions of the record that supported that reason. Accordingly, we again conclude that the ALJ applied the correct legal standard in weighing Dr. Hanze's opinion.

11

Claimant also argues that the evidence the ALJ cited as consistent with Dr. Hanze's opinion either did "not support nondisability or [was], in fact, inconsistent with Dr. Hanze's opinion." Opening Br. at 30-31. But claimant does not specify which evidence was inconsistent with Dr. Hanze's opinion. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (noting that we consider only those contentions that have been adequately briefed). Moreover, for the reasons described above, we conclude that substantial evidence in the record supports the ALJ's decision to afford Dr. Hanze's opinion significant weight.

### 3. Dr. Siegfried

An ALJ must consider every medical opinion in the record. 20 C.F.R. §§ 404.1527(c), 416.927(c). Even if a treating physician's opinion is not entitled to controlling weight, "the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in [20 C.F.R. §§ 404.1527(c) and 416.927(c)], for the weight assigned." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

Claimant argues that the ALJ failed to give any weight at all to Dr. Siegfried's opinion. She contends that her attorney identified Dr. Siegfried as a treating physician in his pre-hearing brief and his opening statement during the hearing, and that the ALJ's failure to weigh Dr. Siegfried's opinion is reversible error.

We agree with the Commissioner that claimant forfeited this argument by not raising it in the district court. *See Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (noting that "waiver principles developed in other litigation contexts are

12

equally applicable to social security cases"). Claimant insists that she did raise this argument in the district court when she argued:

> The findings of the administrative law judge (alj) regarding the weight to be afforded the opinion evidence did not comply with the regulations regarding the opinion of a treating physician, are not based on substantial evidence, and do not address the relevant factors set forth in the regulations.

Reply Br. at 5. But claimant did not identify Dr. Siegfried as the treating physician whose opinion the ALJ improperly weighed,[10] and the magistrate judge clearly understood this argument as pertaining only to Dr. Suddath and Dr. Hanze. *See* Aplt. App. Vol. 8 at 1989. Accordingly, we decline to consider this argument for the first time on appeal.

## B. Consideration of Severe and Non-Severe Impairments in Formulating Claimant's RFC

"[I]n assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, whether severe or not severe." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (emphasis omitted); *see also* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically

---

[10] Claimant cites our unpublished decision in *Williams v. Berryhill*, 682 F. App'x 665 (10th Cir. 2017), to suggest that she was not obligated to identify in the district court a specific opinion that the ALJ failed to correctly evaluate. In *Williams*, we construed the claimant's argument that the ALJ's physical RFC finding was not supported by substantial evidence as fairly encompassing a challenge to the only source on which that RFC finding was based. *Id.* at 669 n.2. In this case, with extensive medical records from multiple treating physicians, the generic reference to "a treating physician" cannot be construed as encompassing a particular physician. Accordingly, we find *Williams* distinguishable and, therefore, not persuasive. *See* 10th Cir. R. 32.1(A) (permitting the use of unpublished dispositions for their persuasive value).

13

determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity."); 20 C.F.R. § 416.945(a)(2) (same).

Claimant argues that the ALJ failed to consider all of her severe and non-severe physical impairments in formulating her RFC. In particular, claimant contends that the ALJ failed to consider her lumbar spine condition beyond determining, at step two, that it was not severe, and did not consider her elbow or shoulder conditions anywhere in his assessment. Claimant points to notes from two physical therapy sessions, which, she contends, reveal that her elbow and shoulder conditions rendered her unable to work at a computer for two hours without pain and her lumbar condition rendered her unable to sit for more than an hour without an increase in pain.[11]

The record reveals that claimant had numerous physical therapy sessions, including the two identified by claimant, to address pain in her elbows, shoulders, and back related to her fibromyalgia. The physical therapy notes mostly contain claimant's subjective reports of limitations due to pain. Even assuming that the notes contained functional limitations assessed by a medical source, the ALJ did consider

---

[11] Claimant also argues that the ALJ's failure to consider her shoulder impairment and its limitations is particularly significant because the ALJ limited her to sedentary work and most sedentary jobs require good use of the hands and fingers. We fail to see the legal connection between claimant's shoulder impairment and the use of her hands and fingers: she does not identify evidence from any medical source assessing a limitation in the use of her hands and fingers due to her elbow, shoulder, or back condition or due to any other medically determinable impairment.

14

claimant's elbow, shoulder and back pain in formulating her RFC.[12]  The ALJ acknowledged that the medical records document claimant's complaints of pain in her "feet, elbows, shoulder, back, hips, gluteal muscles, and thighs."  Aplt. App. Vol. 1 at 24.  And the ALJ stated that her "symptoms and objective findings demonstrate limitations in the claimant's physical capabilities."  *Id.*  However, considering the record as a whole, the ALJ concluded that her physical impairments were not as limiting as claimant alleged and treatment had afforded her greater pain relief than she alleged.  In short, the ALJ did not fail to consider all of claimant's medically determinable impairments in formulating her RFC, and we will not reweigh the evidence.[13]

## III.

For the foregoing reasons, the judgment of the district court is affirmed.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

---

[12] We note that claimant argues only that the ALJ did not consider these impairments at all; she does not argue that the ALJ erred in weighing a physical therapist's opinion with respect to her functional limitations.

[13] Claimant has not challenged the ALJ's credibility assessment that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  Aplt. App. Vol. 1 at 23-24.