FILED
United States Court of Appeals
Tenth Circuit

August 5, 2019

Elisabeth A. Shumaker
Clerk of Court

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT
_____

IRENE PANAS, on behalf of M.E.M.,
a minor,

    Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

    Defendant - Appellee.

No. 18-2145
(D.C. No. 1:17-CV-00364-WJ-JHR)
(D. N.M.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **BRISCOE**, **BALDOCK**, and **BACHARACH**, Circuit Judges.
_____

Irene Panas appeals the district court's order affirming the Commissioner's

denial of an application for supplemental security income she filed on behalf of her

minor daughter M.E.M.  We exercise jurisdiction under 28 U.S.C. § 1291 and

42 U.S.C. § 405(g).  We reverse and remand for further consideration by the agency.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND

Ms. Panas filed the application for benefits in August 2013, claiming M.E.M. was disabled since 2007. M.E.M., born in late 1999, was under the age of eighteen at the time the application was filed and hence her application was subject to review under the disability standards for children. *See* 42 U.S.C. § 1382c(a)(3)(C)(i) (defining disability for individuals under eighteen). After the agency denied the application initially and on reconsideration, Ms. Panas requested and received a hearing before an administrative law judge (ALJ), at which she and M.E.M. testified. The ALJ determined that M.E.M. had the severe impairments of anxiety, affective disorder, learning disorder, obesity, and speech and language. Applying the disability analysis for children, the ALJ determined that M.E.M.'s impairments were not medically equal or functionally equivalent to a listed impairment, and therefore she was not disabled. Accordingly, the ALJ denied benefits. The Appeals Council denied review, thus making the ALJ's decision the Commissioner's final decision. *See* 20 C.F.R. § 416.1481. The district court adopted the recommendation of a magistrate judge and affirmed.

Ms. Panas appeals on behalf of M.E.M., asserting that the ALJ failed to compare M.E.M. to non-disabled children, erred in evaluating three domains of functioning, and improperly assessed her credibility and that of M.E.M. and M.E.M.'s father, who submitted a lay-witness statement.

## II. DISCUSSION

"We review the district court's decision *de novo* and therefore must independently determine whether the agency's decision (1) is free of legal error and (2) is supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001) (internal quotation marks omitted).

A child under eighteen years of age is "disabled" if the child "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The three-step process for assessing whether a child is disabled under this definition requires an ALJ to determine "(1) that the child is not engaged in substantial gainful activity, (2) that the child has an impairment or combination of impairments that is severe, and (3) that the child's impairment meets or equals an impairment listed in Appendix 1, Subpart P of 20 C.F.R. Pt. 404." *Briggs*, 248 F.3d at 1237 (citing 20 C.F.R. § 416.924(a)). For the third criterion, "the ALJ must consider whether the impairment, alone or in combination with another impairment, medically equals, or functionally equals the listings." *Id.* (internal quotation marks omitted).

Ms. Panas contends that M.E.M.'s impairments meet the functional equivalency test, which "means that the impairment is of 'listing-level severity; i.e.,

it must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. . . .'" *Id.* n.1 (quoting 20 C.F.R. § 416.926a(a)). Ms. Panas argues that the ALJ erred in determining (1) that M.E.M.'s limitations in the domains of "acquiring and using information" and "attending and completing tasks" were less than "marked," and (2) that she had no limitations in the domain of "health and physical well-being." A "marked" limitation means the child's "impairment(s) interferes seriously with [her] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). Ms. Panas also argues that the ALJ committed various errors in comparing M.E.M.'s functioning to that of other children her age who do not have impairments. We address this contention first.

## A. Comparing M.E.M. to Non-Disabled Children

Ms. Panas asserts that the ALJ committed an error of law because he failed to address how M.E.M. compared to non-disabled children when evaluating the domains of functioning. Pursuant to 20 C.F.R. § 416.926a(b), the ALJ was required to "look at how appropriately, effectively, and independently [M.E.M.] perform[ed] [her] activities compared to the performance of other children [her] age who do not have impairments." *See also* Social Security Ruling (SSR) 09-2p, 2009 WL 396032, at *1 (Feb. 18, 2009) (directing evaluation of "how appropriately, effectively, and independently the child functions compared to children of the same age who do not have impairments").

The ALJ's decision does not contain a comparison of M.E.M. with children who do not have impairments. The ALJ stated that he had compared M.E.M.'s

4

functioning "to other children the same age who do not have impairments," Aplt. App. Vol. 2, at 18, but he did not. Instead, the ALJ only provided boilerplate stating the traits non-disabled children should have in each relevant domain. *See id.* at 22-27. This boilerplate language is insufficient because the ALJ was required to do more than simply recite the factors he was supposed to consider in assessing M.E.M's functioning in each domain. *See Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008) (holding ALJ's analysis was "improper boilerplate because he merely recited the factors he was supposed to address and did not link his conclusions to the evidence").

The Commissioner argues that by evaluating M.E.M.'s impairments in the relevant domains of functioning, the ALJ necessarily considered her limitations compared to other children her age who do not have impairments. The Commissioner relies on SSR 09-2p, 2009 WL 396032, at *3. This apparently refers to the Ruling's provision that ALJs are not required "to provide formal answers to . . . specific questions" used "to evaluate a child's limitations on a longitudinal basis," such as a comparison of the child's activities to those of other children the same age who do not have impairments. *Id.* at *2-3. But even if a formal answer is not required, the SSR makes it clear that the "critical element" in the ALJ's evaluation in each domain "is how appropriately, effectively, and independently the child performs age-appropriate activities." *Id.* at *3. Thus, the question is whether the ALJ properly considered the relevant evidence regarding M.E.M.'s functioning in each domain and compared her performance to that of her non-disabled peers in

5

determining the severity of her limitations.  For the reasons set out below, we conclude the ALJ did not adequately assess the relevant evidence and explain his determination that her limitations in each domain as compared to her peers were less than "marked."  Therefore, we remand this issue for further proceedings.[1]

**B. Acquiring and Using Information**

The domain of acquiring and using information focuses on how well a child acquires or learns information and how well she uses the information she has learned. 20 C.F.R. § 416.926a(g).  M.E.M. was an adolescent at the time the application was filed.  *See* 20 C.F.R. § 416.926a(g)(2)(v).  The regulations provide that an adolescent should be able to demonstrate her academic learning and to use that learning in daily living situations without assistance.  *Id.*  An adolescent should also "be able to comprehend and express both simple and complex ideas, using increasingly complex language (vocabulary and grammar) in learning and daily living situations."  *Id.*  In addition, an adolescent should learn to apply these skills to help her enter the workplace after high school.  *Id.*

The ALJ determined that M.E.M.'s limitation in the domain of acquiring and using information was less than "marked."  Ms. Panas contends that in reaching this conclusion the ALJ committed several legal errors, including improperly discounting the opinion of consulting examining psychologist Dr. Krueger that M.E.M. "clearly

---

[1] "The agency does not contend that the ALJ's error[s] [are] harmless, and we will not fashion a party's arguments."  *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1176 (10th Cir. 2014).

does have marked impairment with these [reading, spelling, and math] basic academic skills." Aplt. App. Vol. 3, at 459. Earlier in the decision, the ALJ assigned "some" weight to Dr. Krueger's opinion, on the ground that the opinion did not include a review of other evidence, but was based on only his one evaluation of M.E.M.

Ms. Panas argues that because the ALJ did not find M.E.M. had a "marked" limitation in this domain, he must have rejected Dr. Krueger's opinion, and improperly did so without explanation. We agree that the ALJ's analysis is inadequate. The ALJ's analysis for this domain consisted of a single sentence: "I find the claimant has less than marked limitation in this area in light of the weight I have accorded to the opinions of Drs. Gucker, Aase, Brady, and Blacharsh, as corroborated by the observations of her teachers and school records." *Id.* Vol. 2, at 23.

The four named physicians are agency physicians who based their opinions solely on their review of M.E.M.'s records. Earlier in the decision, the ALJ assigned "significant" weight to the opinions of Drs. Gucker and Aase, who found M.E.M. less than "markedly" limited in this domain, and "some" weight to the opinions of Drs. Brady and Blacharsh, who also opined that M.E.M. had less than "marked" limitation in this domain. But in his assessment of M.E.M.'s limitations in this domain, the ALJ did not explain why the "some" weight he assigned to the opinions of Drs. Brady and Blacharsh outweighed the "some" weight he assigned to the opinion of Dr. Krueger, a consulting examining psychologist. In addition, the

7

opinion of a consulting examining physician, like Dr. Krueger, is generally entitled to more weight than that "of an agency physician who has never seen the claimant." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). Here, the ALJ apparently did the reverse, giving more weight to the opinions of the reviewing agency physicians. If the ALJ intended to reject Dr. Krueger's opinion in favor of the non-examining physicians' opinions, he needed to provide a legally sufficient explanation for doing so.

The ALJ's stated reasons for discounting Dr. Krueger's opinion—the opinion was "a snapshot of [M.E.M.'s] condition at one time" and did not include a review of other evidence—Aplt. App. Vol. 2, at 20—do not suffice. First, the short duration of a professional medical relationship alone is not a legitimate ground to reject an examining source's opinion. *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012). Second, contrary to the ALJ's statement, Dr. Krueger reported that he based his opinion on various sources, including "Review of Documents." Aplt. App. Vol. 3, at 457. In addition, he recognized that M.E.M. had a "long history of learning problems and a long history of being in special education classes." *Id.* at 459.

Furthermore, the ALJ ignored that Dr. Krueger administered and interpreted diagnostic tests as part of his examination; he did not rely solely on the subjective reports by M.E.M. and Ms. Panas. *Cf. Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (concluding the ALJ properly gave no weight to a physician's opinion because he met with the claimant only once, he relied on her subjective report, and his opinion was not supported by the evidence). And although the ALJ

8

relied on part of the test results of the Wide Range Achievement Test administered by Dr. Krueger to find that M.E.M. did not meet a listing, he did not discuss the test results in evaluating M.E.M.'s functional equivalency in this domain.

In relying on these test scores to find that M.E.M. did not meet a listing, however, the ALJ cited only to the relatively higher test scores of 74 each for reading and spelling (reportedly placing M.E.M. in the 4th percentile), while ignoring the much lower score for arithmetic—54 (less than the 1st percentile). *See* Aplt. App. Vol. 3, at 461. "We have held that it is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Carpenter*, 537 F.3d at 1265 (brackets and internal quotation marks omitted). This rule follows from our larger directive that "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Hendron v. Colvin*, 767 F.3d 951, 955 (10th Cir. 2014) (internal quotation marks omitted). Ms. Panas argues the ALJ failed to comply with this requirement as well because he failed to consider the evidence provided by school psychologist and educational diagnostician Dr. Ewers in discussing this domain or elsewhere in his decision.

Dr. Ewers administered standardized tests to M.E.M. and concluded that her "academic skills [were] still about two to three years below grade level in most areas." Aplt. App. Vol. 3, at 384. Ms. Panas contends that one test score was "3 points shy of two standard deviations below the mean," Aplt. Opening Br. at 23, thus

9

demonstrating a "marked" limitation in this domain. This argument is based on 20 C.F.R. § 416.926a(e)(2)(iii), which provides that the agency "will find that [a child has] a 'marked' limitation when [she has] a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and [the child's] day-to-day functioning in domain-related activities is consistent with that score." M.E.M.'s standardized test score did not meet this standard, but her test scores still must be considered along with other evidence, *id.* § 416.926a(e)(4)(ii) (stating the agency "will consider [the child's] test scores together with other information we have about [her] functioning, including reports of classroom performance and the observations of school personnel and others").

Furthermore, Dr. Ewer's conclusion that M.E.M. was two to three grade levels below her non-disabled peers was probative evidence not addressed by the ALJ. *See* SSR 09-3p, 2009 WL 396025, at *6 (Feb. 17, 2009) (stating an example of a limitation in this domain is an adolescent who "[i]s not reading, writing, or doing arithmetic at an appropriate grade level").

Ms. Panas further complains that the ALJ failed to discuss various school records in assessing M.E.M.'s functioning in this domain. Although the ALJ did summarize reports from M.E.M.'s teachers and other school records earlier in his decision, the ALJ's minimal analysis of M.E.M.'s abilities in this domain does not explain the part the school reports and records played in the ultimate conclusion.

10

"[T]he ALJ should link his findings closely with the evidence and avoid making conclusions in the guise of findings." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1172 (10th Cir. 2012). As described above, the ALJ failed to comply with this and other requirements in determining that M.E.M.'s limitations in the domain of learning and acquiring information were less than "marked." We therefore reverse and remand this case for the ALJ to assess and explain M.E.M.'s limitations in this domain in accordance with the governing legal standards.

## C. Attending and Completing Tasks

Under the domain of attending and completing tasks, the ALJ must evaluate whether the child is able to focus and maintain attention on the task at hand, and whether she is able to begin, carry through, and finish her activities. 20 C.F.R. § 416.926a(h); SSR 09-4p, 2009 WL 396033, at *2 (Feb. 18, 2009). The regulations provide that an adolescent should be able to pay attention during longer presentations and discussions, maintain concentration while reading textbooks, and independently plan and execute long-range academic projects. 20 C.F.R. § 416.926a(h)(2)(v). In addition, an adolescent should be able to organize her materials and plan her time to complete schoolwork, as well as to maintain her attention on a task without being distracted by her peers. *Id.*

The ALJ determined that M.E.M.'s limitation in the domain of attending and completing tasks was less than "marked." Again, the ALJ provided only a one-sentence analysis: "I find the Claimant has less than marked limitation in this area in light of the weight I have accorded to the opinions of Drs. Gucker, Aase, and

11

Lang, as corroborated by the observations of her teachers and school records." Aplt. App. Vol. 2, at 23. As described earlier, Drs. Gucker and Aase were agency reviewing physicians, and both opined based on their record review that M.E.M. had less than "marked" limitation in this domain. Dr. Lang was a consulting examining physician who opined, among other things, that M.E.M. had borderline cognitive functioning, was easily distracted, and needed to be redirected to the task at hand. Earlier in his decision, the ALJ assigned each of these doctors' opinions "significant" weight. But the ALJ did not explain how the "significant" weight he afforded Dr. Lang's opinion supported a determination that M.E.M.'s limitations in this domain were less than "marked." The ALJ also failed to explain why he did not accord Dr. Lang's opinion greater weight than those of the agency reviewing physicians in light of his examination of M.E.M. *See Robinson*, 366 F.3d at 1084 (stating that the opinion of a consulting examining physician is generally entitled to more weight than that of agency reviewing physicians). Therefore, we remand for the ALJ to include this explanation in the analysis.

Ms. Panas also asserts that the ALJ failed to address M.E.M.'s math teacher's assessment that she had serious problems relating to focus, persistence, and pace. In her report, the math teacher found no problems or only slight problems in seven areas in this domain, an obvious problem in one area (paying attention when spoken to directly), a serious problem in three areas (focusing, completing assignments, and pace), and a very serious problem in one area (working without distracting self or others). Although the ALJ recognized the math teacher's assessment, he did not

12

explain how the obvious, serious, and very serious problems factored into the disability determination. "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Hendron*, 767 F.3d at 955 (internal quotation marks omitted). On remand, the ALJ should explain his treatment of the math teacher's assessment.

### D. Health and Physical Well-Being

The domain of health and physical well-being "consider[s] the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on [the child's] functioning" that are not addressed in the domain pertaining to gross and fine motor skills. 20 C.F.R. § 416.926a(l); *see also* SSR 09-8p, 2009 WL 396030 (Feb. 17, 2009) (discussing domain of health and physical well-being).

Ms. Panas challenges the ALJ's determination that M.E.M. had no limitation in this domain. Once again, the ALJ's analysis is contained in a single sentence: "I make this finding [that Claimant has no limitation] based on the weight I have accorded the opinions of Drs. Gucker, Aase, Blacharsh, and Brady, and supported by the record as a whole." Aplt. App. Vol. 2, at 27. As discussed above, Drs. Gucker, Aase, and Blacharsh are agency physicians, as is Dr. Brady, who did not examine M.E.M., but based their opinions on their review of M.E.M.'s records. Drs. Gucker and Aase rated M.E.M. as less than "markedly" limited in this domain, while Drs. Blacharsh and Brady rated her as having no limitation.

13

Ms. Panas argues that the ALJ improperly evaluated the opinion of treating psychologist Dr. Davies. Dr. Davies had treated M.E.M. for depression for about one year and opined that she "suffer[ed] from severe social anxiety and shyness which prevent[ed] her from making friends easily." Aplt. App. Vol. 2, at 21. Dr. Davies also stated that M.E.M.'s "depression impact[ed] her ability to progress in school and in life." *Id.* An earlier report by Dr. Davies indicated that M.E.M. had friends and participated in art and music.

"A treating [psychologist's] opinion must be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1176 (10th Cir. 2014) (internal quotation marks omitted). If "a treating [psychologist's] opinion is not given controlling weight, the ALJ must explain what weight, if any, was assigned to the opinion using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927." *Id.* at 1176-77 (internal quotation marks omitted).[2] This requires the ALJ to "give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion, and if he rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Id.* at 1177 (internal quotation marks omitted).

The ALJ assigned only "some" weight to the opinion of Dr. Davies because her "assessment that [M.E.M.] [was] three or four years behind her peers [was] not

---

[2] Different guidelines apply to the evaluation of claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

14

supported by the record." Aplt. App. Vol. 2, at 21. But this does not explain the reasons for assigning "some" weight to this opinion because the ALJ did not suggest what parts of the record failed to support it. Therefore, on remand the ALJ should evaluate Dr. Davies' opinion using the appropriate factors and provide good reasons for the weight he assigns the opinion.

## E. Credibility

Ms. Panas also asserts that the ALJ improperly evaluated the evidence she provided, her own testimony, M.E.M.'s testimony, and the written statement submitted by M.E.M.'s father. "In determining whether a child is disabled, the agency will accept a parent's statement of a child's symptoms if the child is unable to adequately describe them." *Knight*, 756 F.3d at 1176. In that case, "the ALJ must make specific findings concerning the credibility of the parent's testimony, just as he would if the child were testifying." *Id.* (internal quotation marks omitted). Furthermore, "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (internal quotation marks omitted).

The ALJ discussed Ms. Panas's testimony and her function report in which she reported that M.E.M. was limited in her ability to communicate, to understand and use what she had learned, to take care of her personal needs and safety, and to complete tasks and homework without being reminded. The ALJ further acknowledged Ms. Panas's evidence that M.E.M.'s impairments affected her social behavior and that M.E.M. spent much of her time in her room or on her cell phone.

15

The ALJ found Ms. Panas's evidence to be not entirely credible and afforded it little weight, stating only that "the credible medical evidence and the record as a whole does not support the extent of the claimed limitations." Aplt. App. Vol. 2, at 22. This is inadequate because "[w]e are left to guess what evidence, if any, belies [Ms. Panas's] testimony. The ALJ simply offered a boilerplate credibility assertion without any reference to the evidence." *Knight*, 756 F.3d at 1176. Moreover, as discussed above, there is record support for Ms. Panas's statements, a circumstance that heightens the need for the ALJ to explain why he found her statements not credible. *See Briggs*, 248 F.3d at 1239.

M.E.M. testified that she did not like school but was passing her classes, she was in counseling for depression, while at home she spent most of her time in her room, and she played with her sisters and went to church. M.E.M. did not know her home address. She wept during much of her testimony. Although the ALJ summarized this testimony in his decision, he did not evaluate M.E.M.'s credibility. On remand, the ALJ should do so.

Ms. Panas also claims the ALJ erred in rejecting the lay-witness statement from M.E.M.'s father. The father submitted a form report describing M.E.M. as "young, shy, [and] slow mentally." Aplt. App. Vol. 2, at 204. He reported that she needed to be reminded to complete tasks and that she was unable to count change, handle a savings account, or use a checkbook. The ALJ assigned little weight to this evidence because "it is a lay opinion based upon casual observation, rather than objective medical examination and testing," and did not outweigh the medical

16

evidence. *Id.* at 22. The ALJ further indicated that M.E.M.'s father's statement may have been influenced by family loyalty and a financial motive.

It was improper for the ALJ to disregard the father's evidence because it was a lay opinion. The ALJ must consider evidence from the child's parents. 20 C.F.R. § 416.926a(b)(3). And as with his discussion of Ms. Panas's credibility, the ALJ did not explain how the medical evidence conflicted with the father's observations, so a remand is required.

Ms. Panas further assigns error to the ALJ's observation that M.E.M.'s father's statement may have been financially motivated. Because "all disability claimants are financially motivated to some extent," *Ramirez v. Barnhart*, 292 F.3d 576, 581 n.4 (8th Cir. 2002), the ALJ's assumption that M.E.M.'s father was motivated by a financial interest, without more, is insufficient to discount his credibility. *Cf. id.* (stating "a claimant's financial motivation may contribute to an adverse credibility determination when other factors [such as evidence of malingering] cast doubt upon the claimant's credibility"). Similarly, family loyalty is generally not a valid reason to find a witness's statement not credible. *See Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) ("[R]egardless of whether they are interested parties, friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to his or her condition." (internal quotation marks omitted)). Therefore, we also reverse and remand for proper credibility determinations.

## III.    CONCLUSION

We reverse the judgment of the district court.  We remand the case to the district court with directions to remand the matter, in turn, to the agency for further proceedings consistent with this order and judgment.

Entered for the Court


Bobby R. Baldock
Circuit Judge